**Cathey Collins PRICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56104.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 18, 1979.

W. B. "Bennie" House, Jr., Houston, for appellant.

Ogden L. Bass, Jr., Dist. Atty., and A. B. Crowther, Jr., Asst. Dist. Atty., Angleton, and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of commercial obscenity. Punishment was assessed by the court at 120 days confinement in jail, to be probated for a period of six months, and a non-probated fine of $750.00. The sufficiency of the evidence is not challenged, and given our holding of the unconstitutional search and seizure involved here and the prejudicial evidence gained therefrom, we do not reach the issue of obscenity. *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

Appellant in her third ground of error alleges that 17 magazines, books, and films were obtained as the result of an illegal search and seizure and that failure of the trial court to suppress this evidence requires reversal. We agree. However, we deem it necessary to discuss points of error one and two before reaching the alleged illegality of the search and seizure.

The record reveals that on March 10, 1976, the appellant opened the Swinger Adult Book Store in Freeport at approximately 10 a. m. Present upon opening the bookstore were the following: Detective Charles Wagner of the Freeport Police Department, Investigator Jimmy Jones of the Brazoria County District Attorney's Office, Brazoria County District Attorney Ogden Bass, and Justice of the Peace Harold Ammons of Brazoria County. The aforementioned "officials" then entered the bookstore in question and Detective Wagner purchased a magazine entitled "EZE Time" which was completely closed and wrapped in cellophane so that only the front and back cover could be seen. The record shows that Judge Ammons never saw the magazine prior to its purchase and that Detective

Wagner saw only the covers of the magazine but never viewed its contents. Detective Wagner got a receipt for the purchase and arrested the appellant on the spot.

Immediately after appellant's arrest without a warrant, Detective Wagner proceeded to conduct a warrantless search and seizure of 17 other books, films, and magazines which later became State's Exhibits 2 through 18 during the trial. The record shows that of these 17 exhibits, nine were books and magazines, all enclosed in cellophane so that none of their contents could be viewed. The other eight exhibits were films located in the display counter of which Detective Wagner never saw one frame, instead using his admitted complete "discretion" in selecting any book, film, or magazine that displayed some form of sexual contact on the cover as a guide in determining what to search and seize. The testimony of Detective Wagner and Judge Ammons does not show that the Judge ever viewed or offered any opinion as to the obscenity of any of these 17 items before their seizure.

During the trial, the court gave a limiting instruction to the jury that these 17 items, State's Exhibits 2 through 18, could only be considered for the limited purpose of going to the issue of knowledge, if any, on the part of the appellant as to the contents of State's Exhibits 1—"EZE Time"—the particular item with which the appellant was charged in the information.

Appellant in her first ground of error alleges that the mere purchase of a magazine does not justify an immediate warrantless arrest when neither the arresting officer nor a detached neutral magistrate has viewed the contents of the magazine in its entirety for a determination of "probable cause."

■ The appellant confuses what is necessary for a finding of obscenity under Section 43.21(1) of the Penal Code and that which is necessary for a finding of probable cause that a certain publication is obscene. Section 43.21(1) defines obscene as: " 'Obscene' means *having as a whole* a dominant

theme that: (A) appeals to the prurient interest of the average person applying contemporary community standards; (B) depicts or describes sexual conduct in a patently offensive way; and (C) lacks serious literary, artistic, political, or scientific value." (Emphasis added) The front cover of the magazine "EZE Time," the purchase of which was the basis for Detective Wagner's arrest of appellant, depicts a partially nude female performing an act of fellatio on a nude male. The back cover of the same magazine reveals a close-up view of a male performing cunnilingus on a nude female. Although Detective Wagner did not view any of the reading matter of the magazine as was the case in *Parrish v. State,* Tex.Cr. App., 521 S.W.2d 849, before the arrest therein, we hold that the front and back covers of the magazine "EZE Time" gave the officer sufficient probable cause to reasonably believe that a violation of Section 43.23, Section 1 of the Penal Code had occurred in his presence and within his view justifying a warrantless arrest under Article 14.01(b), V.A.C.C.P. The warrantless arrest was legal and proper. *U. S. v. Fragus,* 428 F.2d 1211 (5th Cir. 1970). Appellant's first ground of error is overruled.

Appellant's second ground of error alleges that State's Exhibits 2 through 18, comprised of various films, magazines, and books, were the result of a search and seizure after an illegal arrest and that their admission into evidence requires reversal in this cause. Based on our previous holding in Ground of Error No. 1 that Detective Wagner had probable cause to make a warrantless arrest of appellant, this ground of error is overruled.

■ Appellant in her third ground of error alleges that the warrantless seizure of allegedly obscene material, contemporaneous with and as an incident to an arrest for the sale of such material, exceeded the constitutional bounds of the Fourth Amendment and thus the admission of such material into evidence mandates a reversal of this cause. It is uncontested: (a) that Detective Wagner had no warrant when he made the seizure, (b) that there had been no

"probable cause" determination by a judicial officer on the question of obscenity prior to the search, and (c) that the search was based solely on Detective Wagner's observing the covers of magazines, books, and film boxes for signs of "sexual contact."

The State in its brief cites *Albrecht v. State,* Tex.Cr.App., 486 S.W.2d 97, as authority for the proposition that evidence of extraneous offenses committed by the accused is admissible to prove scienter, where intent or guilty knowledge is an essential element of the State's case as is the case here. The State's reliance is misplaced, however, because the issue is not how the evidence was used at the trial, but how this evidence was obtained. It is clear that in his search and seizure of the 17 items in question, Detective Wagner actually made ad hoc decisions on the spot and that each decision was made with little opportunity for reflection and deliberation, based solely on whether or not there was some sexual conduct on the cover of the books, magazines, or film boxes. He was provided with no guide to the exercise of his discretion because there was no step in this procedure before seizure designed to "focus searchingly on the question of obscenity." *Marcus v. Search Warrant,* 367 U.S. 717 at 732, 81 S.Ct. 1708 at 1716, 6 L.Ed.2d 1127 (1961).

■ Where the material sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476 at 485, 85 S.Ct. 506 at 511, 13 L.Ed.2d 431 (1965). "A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." *Roaden v. Kentucky,* 413 U.S. 496 at 501, 93 S.Ct. 2796 at 2800 (1973). Thus, "[w]here presumptively protected materials are sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field." *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

■ "The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression."[1] *Roaden v. Kentucky,* supra, 413 U.S. at 504, 93 S.Ct. at 2801.

"*[W]here seizure is sought of allegedly obscene materials, the judgment of the arresting officer alone is insufficient to justify issuance of a search warrant or a seizure without a warrant incident to arrest. The procedure for determining probable. cause must afford an opportunity for the judicial officer to 'focus searchingly on the question of obscenity.'*" (Emphasis added) *Zurcher v. Stanford Daily,* supra; *Marcus v. Search Warrant,* supra, 367 U.S. at 732, 81 S.Ct. at 1716; *A Quantity of Books v. Kansas,* 378 U.S. at 210, 84 S.Ct. at 1725; *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636 at 637, 88 S.Ct. 2103 at 2104, 20 L.Ed.2d 1313 (1968); *Roaden v. Kentucky,* supra, 413 U.S. at 502, 93 S.Ct. at 2800; *Heller v. New York,* 413 U.S. 483 at 489, 93 S.Ct. 2789 at 2793, 37 L.Ed.2d 745 (1973).

■ It should be noted that a magistrate was present at the Swinger Adult Book Store at the time the warrantless search and seizure was made. It would have been fairly easy for the magistrate to have "focused searchingly on the question of obscenity" while in the store and then issued the corresponding search warrant. This procedure was upheld in *West v. State,* Tex.Cr. App., 489 S.W.2d 597, and in *Heller v. New York,* supra. It should also be noted that the 17 exhibits which were improperly admitted into evidence would not have been excluded under Fourth Amendment requirements if the officer had purchased them along with the magazine "EZE Time" before his arrest of appellant. The Fourth Amendment protects against unreasonable searches and seizures, not against "unreasonable" purchases.

In this case, the probable prejudicial effect of the admission of the 17 books, films, and magazines in evidence requires reversal of appellant's conviction.

We agree with the State that evidence such as that included in Exhibits 2 through 18 *can* be used as circumstantial evidence to show knowledge on the part of an appellant of the contents of the allegedly obscene material of which she is accused of selling under Section 43.23(a) of the Penal Code.

In *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, the Supreme Court stated that "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." See also *Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

We also agree with the court's charge in the instant case dealing with the issue of the 17 films, magazines, and books as evidence of knowledge of the alleged obscenity of the magazine "EZE Time" by the appellant. That part of the charge reads:

The Defendant is on trial solely on the charge alleged against her in the information. There has been evidence introduced before this jury of other material that was seized by the State at the time of the Defendant's arrest. Accordingly, you may consider such evidence of extraneous material *only in the event you believe beyond a reasonable doubt that the extraneous material is obscene,* and then only for the limited purpose of determining knowledge, if any, on the part of the Defendant of the contents of the material that the Defendant is charged in the information with selling, and *for no other purpose whatsoever.* [Emphasis added]

■ However, to find that the extraneous material was obscene, the material must have as "a dominant theme" certain obscenity criteria *"as a whole."* In the instant case, however, the record does not reflect that the jury was allowed to see any

1. This does not mean an adversary proceeding is needed before seizure, since a warrant may be issued ex parte. *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

of the films, magazines, or books *in their entirety* to make a finding of obscenity beyond a reasonable doubt and then to use this finding as evidence of knowledge on the part of the appellant of the contents of "EZE Time." In fact, one of the notes from the jury in the record reads: "Please send in several of the cellophane wrapped materials." The record then shows that Presiding Judge Gayle sent back the following message to the jury: "Cellophane wrapped materials are all sent in. Do not remove cellophane." By not allowing the jury to remove the cellophane and examine the contents of these books, it was impossible for the fact finder at trial to view the entire material before it made the ultimate judgment that, "taken as a whole the books appealed to the prurient interest." See *Bryers v. State*, Tex.Cr.App., 480 S.W.2d 712; *Bourland v. State*, Tex.Cr.App., 502 S.W.2d 8.

More important, however, is the fact that in only allowing the jury to view the covers of 17 books, films, and magazines without being able to view their contents to find possible "literary, artistic, political, or scientific value," [Section 43.21(1)(C), Penal Code], it is not possible to say that these 17 exhibits of "sexual contact" were harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or that "there is a reasonable possibility that the evidence . . might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85 at 86–87, 84 S.Ct. 229 at 230, 11 L.Ed.2d 171 (1963).

Given our disposition of this case, our consideration of appellant's last ground of error is unwarranted.

The judgment is reversed and the cause remanded.

ONION, P. J., concurs in the result.